Opinion filed April 28,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00127-CR

                                                    __________

 

                        COLONEL
LIVINGSTON LEWIS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 385th District Court

                                                          Midland
County, Texas

                                                   Trial
Court Cause No. CR35139

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The jury convicted Colonel Livingston Lewis of aggravated sexual assault of a person
sixty-five years old or older.  The trial court assessed his punishment at
confinement for a term of forty years in the Institutional Division of the
Texas Department of Criminal Justice.  Appellant challenges his conviction in a
single issue.  We affirm.

Background
Facts

The
victim, W.V., testified that a man entered her apartment in the early morning
hours of July 19, 2008, and sexually assaulted her.  W.V. was sixty-seven years
old at the time, and she lived alone in the Ashton Way Apartments.  She had
left the door to her patio open that night because her air conditioner was not
working.  As she lay asleep on a sofa in her living room, she was rushed by a
man coming through her patio door.  He told her not to scream as he put his
hand over her mouth.  Her attacker put a terry cloth rag over her face and told
her not to look at him.  He then raped her both vaginally and anally over the
course of the next thirty minutes.    After the assault concluded, the attacker
told W.V. to “wash up” in her bathroom to remove DNA evidence from her body.  Her
eyes remained covered during this time except for a brief moment when W.V. saw
her attacker from the waist down.  He then instructed W.V. to go inside her
bedroom and wait there until she counted to thirty.  W.V.’s attacker then left
her apartment during this period, after which W.V. called the police.

Detective
Charles Sims of the Midland Police Department responded to Midland Memorial
Hospital when notified of the sexual assault to meet with W.V.  He then
transported her back to her apartment after she was examined and treated at the
hospital.  Detective Sims recovered a large, unique shoe print from inside
W.V.’s living room.  He found the same shoe print outside her apartment.  Detective
Sims also found a chair that had been used by the attacker to climb onto W.V.’s
patio.

W.V.
told Detective Sims that she did not know her attacker but that she believed he
was a black male in his late twenties to thirties in age with large thighs and
large lips.  She estimated his height to be 5’6” to 5’8” and his weight to be
200 pounds with a stocky, muscular build.    Based
on W.V.’s description, Detective Sims identified Marcus Boykins as an initial
person of interest.  Boykins was a frequent visitor to the apartment complex,
and his physical build appeared to match W.V.’s description.  Boykins
voluntarily provided a DNA sample to Detective Sims.  A subsequent
comparison of his DNA to that of the semen recovered from W.V. excluded him as
the source of the semen.

The
DPS crime lab in Lubbock subsequently informed Detective Sims that there was a
“DNA CODIS hit” for the semen recovered from W.V.[1] 
The CODIS manager advised Detective Sims that the source of the DNA extracted
from the semen matched appellant’s DNA profile.    Based upon this information,
Detective Sims obtained a search warrant for appellant’s DNA and his residence
in Midland.  Detective Sims executed the search warrant on September 8,
2008.    He recovered a pair of Steve Madden shoes from inside appellant’s home
that had the same unique shoe print that he found at W.V.’s apartment.

Detective
Sims also obtained a recorded statement from appellant.  Appellant stated that
he had lived in the Ashton Way Apartments for two years in the past and that he
was last there a month or two ago around 12:30 to 1:00 a.m.  He further stated
that he recalled having consensual sex with an older lady at the apartment
complex.  He initially stated that he entered her apartment through the front
door by knocking on it.  In this regard, he stated that, although he did not know
the lady’s name, he knew her and had been inside of her apartment on fifty to
sixty prior occasions.  When confronted with the presence of his shoe prints
outside the patio door, appellant subsequently admitted that he climbed over
the balcony and entered through the patio door.  However, he continued to
assert that the woman invited him inside.  He stated that they talked for two
hours and then they engaged in consensual sex.

Detective
Sims obtained a DNA sample from appellant and forwarded it to the DPS crime lab
in Lubbock.  Stephen Brent Hester, a forensic scientist at the crime lab,
performed a comparative analysis of appellant’s DNA sample to the DNA profile
extracted from the semen recovered from W.V.  He concluded that appellant could
not be excluded as the source of the DNA extracted from the semen.  As per his
report:  

The probability of
selecting an unrelated person at random who could be the source of the major
component in this DNA profile is approximately 1 in 5.679 septillion for
Caucasians, 1 in 7.692 sextillion for Blacks and 1 in 4.958 septillion for
Hispanics.  To a reasonable degree of scientific certainty, [appellant] is the
source of the major component from this DNA profile (excluding identical
twins).

 

Appellant
did not testify during the guilt/innocence phase.  However, his trial counsel
stated during his opening statement:  “We have a man who openly confesses to
the police he had sex with this lady.”  Appellant called his wife as a defense
witness to testify that she and appellant knew W.V. and had been inside her
apartment on occasion to borrow W.V.’s telephone while they lived in the same
apartment complex.  W.V. testified that she did not remember appellant or his
wife when she was recalled to the stand during appellant’s case-in-chief.

Sufficiency of the Evidence

In
a single issue, appellant challenges the legal and factually sufficiency of the
evidence supporting his conviction.  We note at the outset of our analysis that
the Texas Court of Criminal Appeals has now held in Brooks v. State, 323
S.W.3d 893 (Tex. Crim. App. 2010), that there is “no meaningful distinction
between the Jackson v. Virginia[2]
legal-sufficiency standard and the Clewis[3]
factual-sufficiency standard;” that the Jackson v. Virginia standard is
the “only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt;” and that “[a]ll
other cases to the contrary, including Clewis, are overruled.”  Brooks,
323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly, a challenge to the
factual sufficiency of the evidence is no longer viable.[4]


To determine if the evidence is legally sufficient, we must review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d
at 899; Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Jackson v.
State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  In conducting a legal
sufficiency review, we are required to defer to the jury’s role as the sole
judge of witness credibility and the weight their testimony is to be afforded.  Brooks,
323 S.W.3d at 899.  This standard accounts for the factfinder’s duty to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  When
the record supports conflicting inferences, we presume that the factfinder
resolved the conflicts in favor of the prosecution and therefore defer to that
determination.  Jackson, 443 U.S. at 326; Clayton, 235 S.W.3d at
778.   Each fact need not point directly and independently to the guilt of the
appellant, as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction.   Hooper, 214
S.W.3d at 13.

Appellant
premises his challenge to the sufficiency of the evidence on the contention
that W.V. “never positively identified her attacker.”  He asserts that she
could not give a detailed description because she was only able to get a very
brief, partial glimpse of her attacker.  He also contends that his height of
6’2” and weight of 400 pounds was much larger than what W.V. described to the
police.  He is essentially asserting that W.V. was attacked by another person
that entered her apartment after he engaged in consensual sex with her and that
this attacker might have used a condom that prevented any semen from the
attacker from being discovered afterwards.

As
the sole judge of the credibility of the witnesses, it was the jury’s role to
weigh the credibility of the witnesses’ testimony and resolve the conflicts in
the evidence.  In this regard, W.V. testified that she only had one sexual
encounter that evening and that it occurred without her consent.[5] 
It was within the jury’s province to accept this evidence as the credible
account of what transpired between her and appellant.  The fact that she could
not identify appellant as her attacker is of no practical consequence given the
DNA evidence and appellant’s acknowledgment that he had sex with her.  Furthermore,
it was well within the jury’s right to reject appellant’s self-serving
statement that his relations with W.V. were consensual.  In support of the
jury’s credibility determination, we note the seemingly incredulous nature of
appellant’s account.  We further note appellant’s initial misstatement to Detective
Sims that he entered W.V.’s apartment through the front door.  Reviewing all of
the evidence in the light most favorable to the verdict, we conclude that any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Appellant’s sole issue is overruled.

This
Court’s Ruling

             The
judgment of the trial court is affirmed.

            

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

April 28, 2011

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel[6]
consists of:  Wright, C.J.,

McCall, J., and Hill, J.[7]









[1]“CODIS” is an acronym for the Combined DNA Index
System.  See Tex. Gov’t Code Ann.
§ 411.142 (Vernon Supp. 2010). 





[2]Jackson v. Virginia, 443 U.S. 307 (1979).





 

[3]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).





 

[4]We note that appellant did not have the benefit of the
opinion in Brooks when this case was briefed.





[5]W.V. testified that she did not have sex in the fifteen
years prior to this episode.

 





[6]Rick Strange, Justice, resigned effective April 17,
2011.  The justice position is vacant pending
appointment of a successor by the governor.





[7]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.